Mrs. C. F. ZEEK et al., Appellants,

v.

Walter GADDY, Appellee.

No. 10369.

Court of Civil Appeals of Texas.

Austin.

Feb. 8, 1956.

Rehearing Denied Feb. 29, 1956.

R. E. Gray, San Saba, for appellants.

Senterfitt, Crump & Jameson, San Saba, for appellee.

HUGHES, Justice.

This suit was filed by Mrs. C. F. Zeek and others against appellee Walter Gaddy for the purpose of establishing a public road across a portion of land owned by Mr. Gaddy in Richland Springs, an incorporated town.

There was no evidence that the strip of land in question had ever been formally dedicated to the public for road purposes. The only evidence from which such dedication could be inferred was that of use by the public for more than ten years. An

appropriate issue submitting this question to the jury was answered against appellants and judgment was rendered accordingly.

Appellants' first four points assert that, as a matter of law, a public road or right of way had been established across a portion of appellee's land.

There is evidence, from several witnesses, that the public had used this strip for pedestrian and vehicular passage for about thirty years.

Mr. Marshall Reavis testified that he bought the land now owned by appellee in 1915 or 1916 and that at that time the strip in question was fenced and there was no opening and no travel across it until he made an opening at the request of and for the convenience of a neighbor who desired to walk through and who was then the only person to be benefited. Mr. Reavis sold the property to B. H. McCarty in 1920. Mr. McCarty was deceased at the time of trial. Mr. Elbert Taylor purchased the property in 1924 or 1925. He testified that at such time there was no vehicular traffic over the strip, that it was grown up in brush and weeds "old blue brush and catclaw about knee deep." He cleared the strip so that horses and wagons could go through and he permitted anyone who so desired to cross.

Mr. Taylor sold the property to appellee in 1926. We quote his testimony:

"Q. And the public generally traveled that. A. Anybody come through there, they was at liberty.

"Q. And you tolerated it, and you have never raised any objection to that until about twenty-seven years passed. Now, why did you raise any objection? A. Why I did?

"Q. Yes. A. Because I thought that land belonged to me and I could walk out there anytime I wanted to and fence my part of that property.

\* \* \* \* \* \*

"Q. Was it your impression, during all the time you have been here on this property, that the strip of land used by automobiles and foot traffic was your land? A. All the way through I thought all that whole thing was mine.

"Q. And you had never objected to them using it up to the time you blockaded it. A. The eighth day of May, 1954.

"Q. Now, tell the jury whether or not it was your impression that you had the right to close it at any time you wanted to. A. I did, and that is the reason, the reason I didn't close it was because these other streets wasn't graded, they wasn't graded, they was going through there; it is pretty handy for people if they are walking through there to school, walking through there to church, driving through there to church, and to accommodate my neighbors, I let them to through there on the impression that I could go out there and fence that land any time I got ready. That is just my ignorance in law, that I didn't do it, because I was under the impression that I could.

"Q. Tell the jury whether or not, at any time since you have owned that property up until the time that that strip was closed to traffic, that you ever tried to keep anybody from using it that wanted to. A. I never did, nobody."

 We believe the evidence above recited and referred to was sufficient to raise an issue of fact as to the adverse use of this strip by the public. The law upon which we base this conclusion is found in Boone v. City of Stephenville, Tex.Civ. App., 37 S.W.2d 842, 843, Justice Alexander, from which we quote:

"A right to use private property as a public thoroughfare may be acquired by prescription, but in order to do so it is necessary to show that an uninterrupted user of the way has been made by the public under an adverse claim of right for the statutory period of limitation. The use by the public must be with the actual or implied knowledge of the owner, adversely,

under claim or color of right, and not merely by the owner's permission. * *

"The adverse use of the property and the claim of right thereto may be inferred from the circumstances of the manner of the use thereof * * * but it is generally a question of fact to be ascertained by the jury * * *. There was no positive evidence that the use of the property by the public was adverse under a claim of right. The only evidence of such adverse claim was the inference to be drawn by the jury from the circumstances of the use of the property. Since the disposition of the case was dependent on the inference to be drawn from the circumstances in evidence showing the adverse use of the property, the jury, and not the court, should have been permitted to draw the inference."

■ Point five is that the court erred in admitting evidence relating to and showing the condition and improvement of streets adjacent to the strip in controversy. This complaint was not made in the motion for a new trial and the point is waived. Rules 321, 324, 374, Texas Rules of Civil Procedure.

■ The last point is that the court erred in admitting in evidence a small picture of the strip in suit which also showed some of the surrounding area. The objection was that this evidence was irrelevant and immaterial in this case. This objection is too general to require our consideration. 41–B Tex.Jur. p. 166. Even if erroneously admitted this would be harmless error because the photograph merely shows the premises about which witnesses had testified and was cumulative of such testimony.

No reversible error appearing the judgment of the trial court is affirmed.

Affirmed.

On Motion For Rehearing.

Appellants say we erred in stating that no formal dedication of the strip for street purposes was shown. They rely upon a deed of "designation" and an accompanying plat made in 1911 by A. J. Wise and J. L. Burleson to the public dedicating streets, avenues and alleys shown on the attached plat of the "Wise-Burleson" Addition to Richland Springs. This plat does show "Church Street" to be located where appellants contend the street to be.

There is no evidence other than that set out above to show a formal dedication of the strip in suit.

Opposing this is a survey made by W. S. Chunn, licensed land surveyor, in 1955.

He testified, without contradiction, that the strip in suit was not in the Wise-Burleson Addition but was in the George Rae Addition and that from an examination of the deed records he found no street or space for a street left where appellants claim it to be.

In their original brief appellants, in regard to the above, say:

"Resulting from the introduction in evidence of both plats there arose some confusion as to whether Church Street, the street which was closed by Appellee and the cause of this suit, was in the Wise-Burleson or the other Addition."

No further argument on this point was made nor did appellants complain of the refusal of the trial court to submit an issue inquiring if a formal dedication of this strip had been made.

We are unconvinced that our original opinion is erroneous and accordingly overrule appellants' Motion for Rehearing.

Motion overruled.